Case 1:17-cv-00189   Document 5   Filed on 09/14/17 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
September 14, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **BENITO ALANIZ, SR.,** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-189 |
| | § | Criminal No. B:15-317-1 |
| **UNITED STATES OF AMERICA,** | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On September 11, 2017, Petitioner Benito Alaniz Sr. ("Alaniz") filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 1.

The Court has an independent obligation to review the record and the pleadings. Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS. After reviewing the record and the relevant case law, it is recommended that Alaniz's petition be denied. Alaniz's claims are belied by the record and do not otherwise merit relief.

**I. Background**

   **A. Factual Background**

On April 21 2015, a federal grand jury – sitting in Brownsville, Texas, – indicted Alaniz and a co-defendant in a two-count indictment. U.S. v. Alaniz, Criminal No. 1:15-317-1, Dkt. No. 1 (hereinafter "CR"). Alaniz was indicted for: (1) conspiracy to possess with intent to distribute more than 100 kilograms of marihuana; and, (2) possession with intent to distribute more than 100 kilograms of marihuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), & 841(b)(1)(B). Id.

   **B. Rearraignment**

On June 30, 2015, Alaniz appeared before the Magistrate Judge and pled guilty – without a written plea agreement – to conspiracy to possess with intent to distribute more

1

than 100 kilograms of marihuana.[1] CR Dkt. No. 38.

On that same day, the Magistrate Judge issued a report and recommendation, which recommended that the District Judge accept Alaniz's guilty plea. CR Dkt. No. 38.

On July 21, 2015, the District Judge adopted the report and recommendation. CR Dkt. No. 47.

**C. Sentencing**

In the final presentence report ("PSR"), Alaniz was assessed a base offense level of 26. CR Dkt. No. 60, pp. 9-10. This level was predicated upon on a relevant conduct finding that Alaniz was responsible for 694.2 kilograms of marihuana. Id.

Alaniz was given a two-level enhancement because he "utilized his juvenile son" in the "transportation and smuggling of marihuana." CR Dkt. No. 60, pp. 9-10. He was also given a two-level enhancement for acting in a supervisory role in the criminal activity. Id.

Alaniz received a three-level reduction for acceptance of responsibility. Id. Thus, Alaniz was assessed a total offense level of 27.

Regarding his criminal history, Alaniz had four adult criminal convictions and was assessed six criminal history points. CR Dkt. No. 60, pp. 11-13. He was assessed an additional two criminal history points because he was on federal supervised release at the time that he committed the instant offense. Id. Thus, he was assessed eight total criminal history points, resulting in a criminal history category of IV. Id.

Based upon Alaniz's offense level of 27 and criminal history category of IV, the presentence report identified a guideline sentencing range of 100 to 125 months of imprisonment. Id., p. 20.

After several continuances, the sentencing hearing was held on January 21, 2016. Dkt. Nos. 62, 70.

At sentencing, Alaniz objected to the two-level enhancement for serving as a supervisor in the criminal activity, arguing that he was not the person who supervised or

---

[1] Count 2 was later dismissed, pursuant to a motion by the Government. CR Dkt. No. 82.

recruited the people who actually brought the marihuana into the United States. CR Dkt. No. 89, pp. 3-4. This objection was overruled. Id, p. 5.

The District Judge sentenced Alaniz to 120 months of imprisonment; five years of supervised release; and a $100 special assessment fee. CR Dkt. No. 89, pp. 8-9. Judgment was entered on March 7, 2016. CR Dkt. No. 82.

### D. Direct Appeal

Alaniz timely filed a notice of direct appeal. CR Dkt. No. 71. On direct appeal, Alaniz asserted that the district court erred in assessing a two-level enhancement for serving as a supervisor of the criminal activity.

On September 20, 2016, the Fifth Circuit affirmed Alaniz's sentence, finding that the district court "did not clearly err in adopting the PSR's unrebutted factual finding that [Alaniz] was an organizer, leader, manager, or supervisor of the criminal activity." CR Dkt. No. 100.

Alaniz filed a petition for a writ of certiorari with the Supreme Court. CR Dkt. No. 101. On February 21, 2017, that petition was denied. Id.

### E. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255

On September 11, 2017, Alaniz timely filed a petition pursuant to 28 U.S.C. § 2255. Dkt. No. 1. In that petition, Alaniz raised three issues, which the Court restates as follows: (1) that Alaniz should have received a two-level reduction for only playing a minor role in the offense; (2) that the factual basis given for his guilty plea was insufficient to support the conviction; and (3) that his conviction violated his right to equal protection under the law, given that the government is choosing not to prosecute some people who possess marihuana in states where it has been legalized. As part of the second and third claims, Alaniz asserts that he received ineffective assistance of counsel, because counsel "refused to assist the Petitioner with this claim." Dkt. No. 1, pp 6-7.[2]

Pursuant to Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS, because

---

[2] It is not entirely clear whether Alaniz is claiming ineffective assistance by his trial counsel, or his appellate counsel, or both. Given that Alaniz's claims are patently meritless, the identity of counsel is of no consequence and does not change the outcome.

the petition is meritless on its face, the Court has not ordered the Government to respond to the petition.

## II. Applicable Law

### A. Section 2255

Alaniz seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

"Section 2255 provides the primary means of collaterally attacking a federal sentence, and is the appropriate remedy for errors that occurred at or prior to the sentencing." Logan v. Warden Fed. Corr. Complex Beaumont, 644 F. App'x 280 (5th Cir. 2016) (quoting Padilla v. U.S., 416 F.3d 424, 425 (5th Cir. 2005)).  A petitioner who seeks to challenge a final conviction by collateral attack, can do so on constitutional or jurisdictional grounds. 28 U.S.C. § 2255(a); U.S. v. Shaid, 937 F.2d 228, 233 (5th Cir. 1991).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004).  To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id.  To prove that counsel's performance was deficient, a petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012).  Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429

F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Failure to prove either prong will defeat an ineffective assistance claim." Leal v. Dretke, 428 F.3d 543, 548 (5th Cir. 2005).

A defendant is "entitled to effective assistance of counsel at all stages of his criminal trial, including the sentencing phase." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997). A defendant may show prejudice at sentencing if counsel's ineffective assistance resulted in any additional incarceration. Glover v. U.S., 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance."). Ineffective assistance of counsel is properly raised for the first time in a § 2255 petition. Massaro v. U.S., 538 U.S. 500, 503-04 (2003).

### III. Analysis

A court may entertain and decide a § 2255 motion without requiring the production of the prisoner at a hearing. 28 U.S.C. § 2255. Further, a district court may deny a § 2255 motion without an evidentiary hearing "only if the motion, files, and records of the case conclusively show the prisoner is entitled to no relief." U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

In analyzing Alaniz's claim, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). While the Court will "read pro se complaints liberally, pro se litigants must still comply with the law and procedural rules." Washington v. E. Baton Rouge Par. Sch. Sys., 471 F. App'x 306 (5th Cir. 2012). Regardless of the standard applied in this case, neither the record – nor the law – support Alaniz's claim.

5

**A. Minor Role**

Alaniz argues that he should have been given a two-level reduction for only playing a minor role in the commission of the offense. This claim is legally and factually meritless.

As an initial matter, the Fifth Circuit has already held that the district court did not err by "finding that [Alaniz] was an organizer, leader, manager or supervisor of the criminal activity." CR Dkt. No. 100. Thus, the Fifth Circuit has, by obvious implication, already concluded that Alaniz did not play a minor role in the commission of the offense.

"[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." U.S. v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) (citing U.S. v. Jones, 614 F.2d 80, 82 (5th Cir. 1980)); U.S. v. Rocha, 109 F.3d 225, 229 (5th Cir. 1997). Any decision made by the Fifth Circuit on direct appeal constitutes the "law of the case" for purposes of the § 2255 action. U.S. v. Goudeau, 512 Fed. App'x. 390, 393 (5th Cir. 2013) (unpubl.) (U.S. v. Troutman, 16 F.3d 1215 (5th Cir. 1994)). Thus, this issue is foreclosed as a matter of law.

Even if the issue was not foreclosed, based upon the Fifth Circuit's decision, it is not cognizable in this petition. Claims that involve a technical application of the guidelines are not cognizable in a § 2255 petition. U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir.1992). Actions that amount to a technical application of the guidelines are defined by the case law. See, e.g., Vaughn, 955 F.2d at 368; U.S. v. Williamson, 183 F.3d 458, 461 (5th Cir. 1999) (issue of whether career offender sentencing enhancement properly applied was a technical application of the Guidelines); U.S. v. Smith, 170 F.3d 184 (5th Cir. 1999) (relevant conduct finding regarding drug weight was a technical application of the Guidelines); U.S. v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998) (error in calculating sentence was a technical application of the Guidelines); Hawkins v. U.S., 706 F.3d 820 (7th Cir.2013) (technical errors in calculating guideline sentencing range are not cognizable on collateral attack after U.S. v. Booker, 542 U.S. 220 (2005) made the guidelines advisory).

A claim that Alaniz should have received a sentencing reduction – for only playing

a minor role in the offense – would similarly be a technical application of the guidelines. See U.S. v. Burgins, 988 F.2d 1212 (5th Cir. 1993) (the defendant's "role in the offense and her acceptance of responsibility are issues touching upon the district court's technical application of the guidelines and are nonconstitutional in nature."). Thus, this claim is not cognizable on collateral attack.

Furthermore, even if the claim was cognizable, it is meritless. The presentence report shows that Alaniz knowingly recruited others to smuggle drugs into the United States and served as a lookout during the commission of the crime. CR Dkt. No. 60. Those who recruit others to commit crimes and direct their actions occupy a managerial role within a criminal association. U.S. v. Burton, 673 F. App'x 380, 383 (5th Cir. 2016) (unpubl.).

Accordingly, this claim is precluded as a matter of law and, even if not, is meritless and should be denied.

### B. Factual Basis

Alaniz claims that the factual basis given at his re-arraignment was insufficient to prove the elements of the offense. This claim is also meritless.

A guilty plea cannot support a judgment of conviction unless there is a factual basis for the plea. Fed. R. Crim. P. 11(b)(3). In determining whether a factual basis exists, the Court compares "(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information." U.S. v. Marek, 238 F.3d 310, 315 (5th Cir. 2001) (en banc).

The factual basis in this case established the following facts:

> On October 9th, 2014, Marcelino Mireles, Jr., driving a white pickup, and his two passengers, [. . .] Sergio Gonzalez-Ruiz, and a 17-year-old juvenile, arrived at the Boca Chica immigration checkpoint on Highway 4 located in Brownsville, Cameron County, Texas. Customs and Border Protection agents inspected the pickup and found a false compartment in the wooden bed of the truck. In it agents discovered 115.7 kilograms, that is, 254.5 pounds, of marijuana. Mireles, Jr., stated he was hired by defendant, Benito Alaniz, Sr., to serve as driver for smuggling the drugs past the checkpoint, that this was his fourth smuggling trip, and that he is paid by Alaniz, Sr., $1,000

per trip. Mireles, Jr., [. . .] further stated his passengers, Gonzalez-Ruiz and the 17-year-old juvenile, who is the son of Alaniz, Sr., would accompany him to pick up the marijuana loads and, in turn, Mireles, Jr., would pay them $100 each, and during these trips Alaniz, Sr., would conduct counter-surveillance and would notify them if a drug detection dog was at the checkpoint.

On October 12th, 2014, Juana Flores, driving an SUV, and accompanied by her two minor children, arrived at the Boca Chica immigration checkpoint on Highway 4 located in Brownsville. Customs and Border Protection agents inspected Flores's vehicle and found a hidden compartment in the roof area. In it agents discovered 54.3 kilograms, that is, 119.4 pounds, of marijuana. Flores says she picked up the marijuana near the river area, that she was paid $1,000 per trip for transporting the narcotics, and she made seven successful trips of about 80 pounds each. Flores also said her ex-boyfriend, Benito Alaniz, Sr., [. . .] had approached her in fall of 2014 wanting to work smuggling drugs, so she introduced him to her boss so Alaniz, Sr., could do drug pickups. Thereafter she was given a white truck in Mexico with a hidden compartment to give to Alaniz, Sr. After driving the truck into the United States, she gave it to him as instructed. The [. . .] the white truck is the truck which was seized from Mireles, Jr., on October 9th.

Further investigation revealed [. . .] bridge crossing records show Flores crossed the white truck from Mexico into Brownsville one month earlier, that is, on September 9th, 2015, at 12:51 a.m. Cell phone records show multiple contacts between Alaniz, Sr., his [. . .] 17-year-old son, and Mireles, Jr., on October 9th, the date of the 115.7 kilogram seizure. The defendant knowingly possessed the narcotics with intent to distribute them to another person within the United States.
CR Dkt. No. 92, pp. 39-41.

Alaniz admitted to these facts, with the exception of the claim that he went to Flores seeking an opportunity to deal drugs; instead, he claimed that she recruited him. CR Dkt. No. 92, p. 42. In either event, the facts establish a drug conspiracy.

"To prove a drug conspiracy, the government must prove that (1) two or more persons, directly or indirectly, reached an agreement to possess with the intent to distribute a controlled substance; (2) the defendant knew of the agreement; (3) the defendant voluntarily participated in the agreement; and (4) the overall scope of the conspiracy involved the drug amount in the charged crime." U.S. v. Bams, 858 F.3d 937, 944–45 (5th Cir. 2017).

In comparing the factual basis to the elements of the offense, it is clear that the facts

admitted by Alaniz clearly support his plea in this case. The factual basis shows that Alaniz reached an agreement with Mireles to possess the drugs with the intent to distribute them. Specifically he hired Mireles and paid Mireles to transport the drugs. In serving as the lookout and paying Mireles, it is clear that Alaniz knew of the agreement. Moreover, given the repeated roles of Alaniz in arranging for the pick up of the drugs and serving as a lookout for drug dogs, it is equally clear that Alaniz participated in the agreement. Finally, given the admission of the weight of the marihuana admitted to by Alaniz during his guilty plea, the scope of the conspiracy involved the amount of drugs, i.e. more than 100 kilograms of marihuana, charged in the indictment.

Given that the factual basis was sufficient, neither his trial nor his appellate counsel was deficient for failing to raise a meritless argument. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Again, this claim is meritless and should be denied.

**C. Equal Protection**

Alaniz appears to argue that his conviction violated his equal protection rights because he was treated more harshly than people who live in states that permit the sale of marihuana. While somewhat novel, this claim is also meritless.

Congress has the authority to regulate and criminalize marihuana under the Commerce Clause. Gonzales v. Raich, 545 U.S. 1 (2005). While some states have decriminalized marihuana, the federal Controlled Substances Act "applies with equal force in states where marijuana is now legalized as a matter of state law, as it does in any other state where marijuana is criminalized both federally and locally." U.S. v. Pickard, 100 F. Supp. 3d 981, 1011–12 (E.D. Cal. 2015).

Furthermore, prosecutors have the discretion to set enforcement priorities as to which defendants will be prosecuted. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision, whether or not to

9

prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

This discretion is not limitless; "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Wayte v. U.S., 470 U.S. 598, 608 (1985) (internal citations omitted). In order to show that the prosecutor's decision violated the Equal Protection Clause, the defendant must provide "clear evidence" of a discriminatory intent and a discriminatory purpose, by showing "that similarly situated individuals of a different race could have been prosecuted, but were not." In re U.S., 397 F.3d 274, 284 (5th Cir.), subsequent mandamus proceeding sub nom. U.S. v. Williams, 400 F.3d 277 (5th Cir. 2005).

Alaniz has not shown that the decision to prosecute him was based on any protected characteristic or arbitrary classification. He also has not shown that there was any discriminatory intent or purpose. Indeed, "the exercise of discretion by federal prosecutors to charge individuals with marijuana-related offenses in some states but not others is consistent with the Due Process and Equal Protection Clauses of the United States Constitution." U.S. v. Filippi, 622 F. App'x 25, 26 (2nd Cir. 2015).[3]

Moreover, given the lack of support – both factually and as a matter of law – Alaniz's attorneys were not ineffective for not pursuing the issue. Clark v. Collins, 19 F.3d at 966.

Accordingly, this claim is meritless and should be denied.

## IV. Recommendation

WHEREFORE it is **RECOMMENDED** that the Petitioner Benito Alaniz, Sr.'s, Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be **DENIED** as meritless.

---

[3] The Court notes that even in states where marihuana use has generally been legalized for recreational purposes, it is illegal to possess marihuana with the intent to distribute it outside of a regulated business environment. Colorado Revised Statute § 18-18-405. Importing more than 250 pounds of marihuana from Mexico and smuggling it into the United States, in a hidden compartment of a truck, is not consistent with distribution in a regulated business environment.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Alaniz's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Alaniz's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded

by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on September 14, 2017.

_____
Ronald G. Morgan
United States Magistrate Judge